```
               IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ALFRED FLOWERS, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 07-2035 (JBS/JS) |
| v. | **OPINION** |
| PAUL SCHULTZ, et al., | |
| Defendants. | |

Alfred Flowers
301 E. Erie Avenue
Philadelphia, PA 19119
    Plaintiff appearing pro se

Michele Brown
Acting United States Attorney
    By:  Irene E. Dowdy
        Assistant U.S. Attorney
401 Market Street
Fourth Floor
P.O. Box 2098
Camden, NJ 08101
    Counsel for Defendants Paul Schultz, Linda Sanders and Brian Patton

**SIMANDLE**, District Judge:

## I. INTRODUCTION

Plaintiff has brought suit against Defendants Linda Sanders, former Warden at the Federal Correctional Institution ("FCI") in Ashland, Kentucky, Brian Patton, present Warden at FCI Ashland, and Paul Schwartz, present Warden at FCI Fairton, in Fairton, New Jersey, pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).  Plaintiff alleges that Bureau of Prisons ("BOP") "staff members" at FCI Ashland mailed

his personal property to Plaintiff's home address though Plaintiff remained in federal custody, thereby at least temporarily depriving Plaintiff of his property without due process in violation of the Fifth Amendment. (Id. ¶¶ 2, 19, 28.) In addition, Plaintiff argues that the mailing of his personal property, which included certain legal papers, to his home denied him access to the courts in violation of the Fifth and Fourteenth Amendment. (Id. ¶ 31.) Finally, Plaintiff maintains the BOP Program Statement 5580.77 governing the care of inmates' personal property is "void for vagueness." (Id. ¶ 30.) He seeks a declaratory judgment, an order forcing Defendants to replace Plaintiff's personal property, and damages.

Presently before the Court are Defendants' motion to dismiss [Docket Item 49], Plaintiff's two motions to change venue to the United States District Court for the Eastern District of Kentucky [Docket Items 39 and 50], and Plaintiff's cross motion for summary judgment [Docket Item 52]. For the reasons set forth below, the Court will grant Defendants' motion to dismiss and deny Plaintiff's motion for summary judgment, and dismiss Plaintiff's motions to change venue as moot.

**II. BACKGROUND**

**A. Factual Allegations**

The Court will set forth the facts as alleged by Plaintiff and construe them in the light most favorable to Plaintiff. From

2

September 8, 1999 to February 23, 2004, Plaintiff was an inmate at FCI Ashland.  (Am. Compl. ¶ 8.)  On January 15, 2004, while still at FCI Ashland, Plaintiff was indicted in the United States District Court for the Eastern District of Louisiana for bank robbery and on February 17, 2004, Correctional Officer Galliher inventoried Plaintiff's property in preparation for Plaintiff's impending transfer.  (Id. ¶¶ 9-10.)  On February 23, 2004, the United States Marshal Service took custody of Plaintiff pursuant to a federal writ and brought him from FCI Ashland to Louisiana for the disposition of his 2004 indictment.  (Id. ¶¶ 11, 16.)  On May 11, 2005, Plaintiff was convicted of bank robbery and on November 9, 2005 was sentenced to sixty months incarceration at FCI Fairton.  (Id. ¶¶ 12, 14-15.)  On February 6, 2006, Plaintiff left the custody of the Marshal and returned to BOP custody to begin serving his new sentence at Fairton.  (Id. ¶ 15.) Meanwhile, on June 29, 2005, while still in the custody of the Marshal and before being sentenced for his bank robbery conviction, Plaintiff completed his original 1999 sentence.  (Id. ¶ 13.)

    Plaintiff's present complaint arises from the handling of Plaintiff's personal property while he was in Marshal custody. When Plaintiff arrived at FCI Fairton, he asked his case manager about the personal property inventoried at FCI Ashland in 2004. (Id. ¶ 18.)  His case manager apparently inquired among the staff

3

at FCI Ashland about Plaintiff's property and received a response from Ashland indicating that Plaintiff's property had been mailed to Plaintiff's home address on July 8, 2005.  (Id. ¶ 19.)  In response, Plaintiff initiated the BOP administrative remedy process seeking reimbursement for the items he believed he had to repurchase.  (Id. ¶ 20.)  Among the personal belongings sent to Plaintiff's home were items Plaintiff purchased from the prison commissary (such as clothing, cosmetics, a watch and a radio) as well as Plaintiff's legal portfolio.  (Id. ¶¶ 25, 27.)  Plaintiff alleges that because those purchased items were unavailable, he was forced to repurchase these items at higher prices.  (Id. ¶ 26.)

Plaintiff's allegations regarding the actual roles of the individual defendants in the complained-of conduct are limited.  According to Plaintiff, Defendant Schultz' only role in Plaintiff's dilemma is that Schultz is "responsible for reviewing all administrative appeals of the administrative remedy process filed by prisoners at FCI Fairton."  (Id. ¶ 5.)  Defendant Sanders was Warden at FCI Ashland during the events of Plaintiff's complaint and was "responsible for reviewing all prison staff decisions based on statutes, regulations, program statements, and policy."  (Id. ¶ 6.)  Defendant Patton is currently Warden at FCI Ashland and is presently "responsible for

reviewing all prison staff decisions based on statute, regulations, program statements, and policy." (Id. ¶ 7.)

### B. Procedural History

On April 19, 2007, Plaintiff Alfred Flowers, proceeding pro se, filed his initial complaint and on June 6, 2007, he filed an amended complaint in this action.  After some delay and confusion regarding service of Plaintiff's complaint, on December 17, 2008, Plaintiff filed the first of the two motions to change venue to the Eastern District of Kentucky presently before the Court.  On February 19, 2009, Defendants moved to dismiss for lack of personal jurisdiction as to Defendants Sanders and Patton, for failure to allege anything beyond respondeat superior liability as to any of the defendants, and on grounds that Defendants are entitled to qualified immunity.  On March 18, 2009, Plaintiff filed the second motion to change venue and on April 2, 2009, he moved for summary judgment.

## III. DISCUSSION

### A. Standard of Review

In its review of Defendant Harrington's motion to dismiss, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v.

Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). Thus, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009); Fowler v. UPMC Shadyside, --- F.3d ---, 2009 WL 2501662, at * (3d Cir. Aug. 18, 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> Therefore, after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1950.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. [] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35.

Fowler, 2009 WL 2501662, at *4.

"In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint,

6

exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citation omitted).

**B.   Motion to Dismiss**

1.   Qualified Immunity

Defendants make the threshold argument that they are entitled to qualified immunity because Plaintiff has failed to allege that any of the defendant have violated a clearly established statutory or constitutional right of which a reasonable person would have known.  Plaintiff responds that the mailing of his personal property to his home was a clear violation of the Due Process Clause of the Fifth Amendment as well as BOP regulations and policy.[1]  Plaintiff having no clearly

---

[1] As noted above, Plaintiff's amended complaint also alleges that the mailing of his legal papers included in his personal property deprived him of access to the courts in violation of the Fifth and Fourteenth Amendments, though he does not defend those claims in his opposition to Defendants' motion to dismiss.  The Court agrees with Defendants that Plaintiff has failed to allege any actual injury as a result of the unavailability of his legal papers (or even that he was somehow prevented from receiving those papers through a third party retrieving them from his home).  Without any specific allegations that the mailing of these documents impeded his exercise of his legal rights, Plaintiff's claim regarding access to the courts must be dismissed for lack of standing. See Lewis v. Casey, 518 U.S. 343, 351 (1996) ("Insofar as the right vindicated by Bounds is concerned, 'meaningful access to the courts is the touchstone,' [430 U.S. 817, 823 (1977)] (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.").
   Plaintiff has alleged that the temporary deprivation of his other personal property required that he expend his own money

established right preventing the BOP from mailing his personal property to his home address after his 1999 sentence had been completed, the Court finds that Defendants are entitled to qualified immunity and will dismiss Plaintiff's suit.

"'The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Bayer v. Monroe County Children and Youth Servs., --- F.3d ---, 2009 WL 2477627, at *3 (3d Cir. 2009) (quoting Pearson v. Callahan, --- U.S. ---, 129 S. Ct. 808, 815 (2009)).  The Court's assessment of whether a defendant is entitled to qualified immunity hinges on two considerations.[2]  The Court must determine "whether the plaintiff has alleged a deprivation of a constitutional right at all," id. at 816 (citation omitted),

---

repurchasing theses items and so that Court will assume that such allegations are sufficient to show an actual injury for the purpose of this motion to dismiss.

[2]  While under Saucier v. Katz, 533 U.S. 194 (2001), overruled in part by Pearson, 129 S. Ct. at 818, the qualified immunity analysis followed a "rigid order of battle," Pearson, 129 S. Ct. at 817 (citation omitted), under which the question of whether a right was clearly established was assessed only if the plaintiff had adequately alleged a violation in the first place, the Supreme Court adopted a more flexible approach in Pearson. As the Court explained, "[b]ecause the two-step Saucier procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking will best facilitate the fair and efficient disposition of each case." Pearson, 129 S.Ct. at 821.

which, as the Court of Appeals has emphasized, is not a question of immunity as such, "but is instead the underlying question of whether there is even a wrong to be addressed in an analysis of immunity." Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007). In addition, the Court must address "whether the right that was [allegedly] violated was clearly established, or, in other words, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. (internal quotations and citations omitted). The inquiry into whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (citation omitted).

   The Court concludes that Plaintiff has no clearly established constitutional or statutory rights which prevented the BOP from mailing his property to his home at the conclusion of his 1999 sentence. As Defendants correctly observe, BOP regulation 28 C.F.R. § 553.14(a)(3) provides that an inmate being released from BOP custody "may arrange to ship personal property at the inmate's expense."[3]  If an inmate refuses to provide a

---

[3] Plaintiff cites the same provision for the opposition position -- that the BOP was obligated to transfer his personal property to FCI Fairton. This argument does not hold water because Plaintiff was not transferred by the BOP from one institution to another, a circumstance covered by § 553.14(a)(1) ("The Warden ordinarily shall allow an inmate transferring to another institution to transport personal items . . ."), but instead was in the custody of the Marshal and released from BOP custody before he arrived at FCI Fairton.

mailing address or refuses to pay for the expense, the BOP may dispose of the property.  28 C.F.R. § 553.14(c).  While Plaintiff's circumstances were somewhat unusual, because he left BOP custody at FCI Ashland but never returned home and instead remained in Marshal custody until he began to serve a new federal sentence and returned to BOP custody at FCI Fairton, BOP regulations clearly permit BOP officials to return inmate property to the address of the inmate's choice when they are released from BOP custody.  28 C.F.R. § 553.14(a)(3); BOP Program Statement P5580.07 at 14-15.  At the time Plaintiff completed his 1999 sentence at FCI Ashland (June 29, 2005) and the BOP returned his personal property (July 8, 2005), Plaintiff had not yet been sentenced for his new 2005 conviction (which occurred on November 9, 2005) or returned to BOP custody.  The Court can find no authority, and Plaintiff points to none, suggesting that either the BOP regulations or our Constitution required the BOP to inquire of the Marshal at the end of Plaintiff's 1999 sentence where Plaintiff preferred his personal belongings to be sent or to indefinitely keep that property until some future date when Plaintiff might return to BOP custody.  In the absence of any such authority and in light of 28 C.F.R. § 553.14(a)(3) permitting the return of mail on release, the Court cannot find that a reasonable BOP official would have believed that returning Plaintiff's personal property to Plaintiff's own home once his sentence was complete and before any new sentence had been

imposed was unlawful.[4]  Defendants are consequently entitled to qualified immunity as to all of Plaintiff's claims.  See Pearson, 129 S. Ct. at 815; Bayer, 2009 WL 2477627, at *3-4.

    2.   Vicarious Liability

Even if Defendants were not entitled to qualified immunity, Plaintiff has failed to allege that any of the defendants were personally involved in the conduct underlying his complaint -- namely, the return of his personal belongings to his home address while he remained in custody of the Marshal.  Plaintiff has offered no argument to the contrary.  Therefore, the Court will likewise grant Defendants' motion on the alternative ground that Plaintiff improperly has relied on the doctrine of respondeat superior to seek relief against Defendants under Bivens.

There is no respondeat superior liability for Government officials facing a Bivens action.  Iqbal, 129 S. Ct. at 1948 (citing Monell v. New York City Dep't of Soc. Servs., 439 U.S. 658, 691 (1978)).  "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 129 S. Ct. at 1948; Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

---

[4] Indeed, the Court finds it perfectly reasonable that the BOP, for the safety of Plaintiff's own property, would return that property to the address of Plaintiff's choice rather than transfer it to some temporary location or hold it indefinitely.

Plaintiff has alleged no facts to suggest that any of the defendants took actions that caused Plaintiff's alleged constitutional deprivation.  Rather, Plaintiff's complaint states that his "petition involves actions by staff members of the [BOP] at FCI Ashland."  (Am. Compl. ¶ 3.)  Defendant Schultz' only role in this incident is that he ultimately denied Plaintiff's request for an administrative remedy and so his final decision permitted Plaintiff to seek judicial review before this Court.  (Id. ¶ 29.)  Defendant Patton was not Warden at the time of the property debacle and Plaintiff's amended complaint is clear that Patton took no part in the return of Plaintiff's personal property.  The mere fact that Patton currently may review prison staff decisions does not suggest that he has any connection to decisions made before he became Warden.  (Id. ¶ 7.)  According to the general allegations in the complaint, Defendant Sanders "is responsible for reviewing all prison staff decisions based on statutes, regulations, program statements, and policy," but there is no allegation that Sanders ordered or even knew about the conduct of her "staff members" when they returned Plaintiff's personal property to his home.  (Id. ¶ 6.)  Without any allegations that any of the defendants, through their own actions, violated Plaintiff's rights, Plaintiff has failed to state a claim for

which relief may be granted.[5]  See Iqbal, 129 S. Ct. at 1948; Rode, 845 F.2d at 1207.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss.  Plaintiff having failed to state a claim for which relief may be granted, the Court will consequently deny Plaintiff's motion for summary judgment and dismiss his motions to change venue as moot.  The accompanying Order shall be entered.

| | |
|---|---|
| **August 25, 2009** | **S/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | United States District Judge |

---

[5] The Court having found that Defendants are entitled to qualified immunity and that Plaintiff has failed to sufficiently allege personal responsibility on the part of any of the defendants, the Court will not address Defendants' remaining arguments for dismissal.

13